# 25-1529

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————

AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, et al.,

*Plaintiffs-Appellants,*

v.

UNITED STATES DEPARTMENT OF JUSTICE, et al.,

*Defendants-Appellees.*

———————

On Appeal from the United States District Court for the Southern District of New York

———————

BRIEF OF AMICUS CURIAE UNITED AUTO WORKERS IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL

Joshua B. Shiffrin
J. Alexander Rowell
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street NW,
Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
Fax: (202) 842-1888
jshiffrin@bredhoff.com
arowell@bredhoff.com
*Counsel for Amicus Curiae*

Dated: September 29, 2025

## CORPORATE DISCLOSURE STATEMENT

The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") does not have any parent corporation or any stockholders.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

INTEREST OF AMICUS CURIAE ............................................................ 1

INTRODUCTION ................................................................................... 3

ARGUMENT .......................................................................................... 4

    I.   Labor Unions, Like the UAW, Advocate for Their Members'
Interests Through a Variety of Methods in Addition to Collective
Bargaining. ..................................................................................... 4

II.  The Tucker Act Does Not Foreclose the District Court's
Jurisdiction To Hear Plaintiffs' Claims. ........................................ 9

    A.  Sovereign Immunity Does Not Bar Plaintiffs' Constitutional
Claims. ...................................................................................... 10

    B.  The Tucker Act Does Not Preclude the District Court's
Jurisdiction. ............................................................................. 13

CONCLUSION ..................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Thakur v. Trump*,
  __ F.Supp.3d __, No. 25-cv-04737, 2025 WL 1734471 (N.D. Cal. June 23, 2025) ...................................................................................17, 18

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
  357 F.3d 62 (D.C. Cir. 2004) ...................................................................15

*Atterbury v. U.S. Marshals Serv.*,
  805 F.3d 398 (2d Cir. 2015) ...........................................................15, 16

*B.K. Instrument, Inc. v. United States*,
  715 F.2d 713 (2d Cir. 1983) ...................................................................14

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) ...........................................................................13, 19

*California v. U.S. Dep't of Educ.*,
  769 F. Supp. 3d 72 (D. Mass. 2025)........................................................20

*Cienega Gardens v. United States*,
  194 F.3d 1231 (Fed. Cir. 1998) ..............................................................17

*Cmty. Legal Servs. in E. Palo Alto v. HHS*,
  137 F.4th 932 (9th Cir. 2025) .........................................................16, 18

*Cohen v. Postal Holdings, LLC*,
  873 F.3d 394 (2d Cir. 2017) ...................................................................15

*Conyers v. Rossides*,
  558 F.3d 137 (2d Cir. 2009) ...................................................................11

*Dalton v. Specter*,
  511 U.S. 462 (1994) .................................................................................11

*Dep't of Educ. v. California*,
  604 U.S. 650 (2025)...........................................................................9, 13

*Dotson v. Griesa,*
    398 F.3d 156 (2d Cir. 2005) ........................................................11, 13

*FDA v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024) ...............................................................................18

*Larson v. Domestic & Foreign Commerce Corp.,*
    337 U.S. 682 (1949) ...............................................................................11

*Me. Cmty. Health Options v. United States,*
    590 U.S. 296 (2020) ...............................................................................14

*Megapulse, Inc. v. Lewis,*
    672 F.2d 959 (D.C. Cir. 1982) ..............................................................15

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n,*
    145 S. Ct. 2658 (2025) ...........................................................................13

*Pollack v. Hogan,*
    703 F.3d 117 (D.C. Cir. 2012) ..............................................................12

*President & Fellows of Harvard Coll. v. HHS,*
    No. 25-cv-11048, 2025 WL 2528380 (D. Mass. Sept 3, 2025).........16, 20

*DHS v. Regents of the Univ. of Cal.,*
    591 U.S. 1 (2020) ..................................................................................19

*Strickland v. United States,*
    32 F.4th 311 (4th Cir. 2022) .................................................................12

*Tootle v. Sec'y of Navy,*
    446 F.3d 167 (D.C. Cir. 2006) ..............................................................18

*United States v. Sherwood,*
    312 U.S. 584 (1941) ...............................................................................10

*Up State Fed. Credit Union v. Walker,*
    198 F.3d 372 (2d Cir. 1999) ............................................................14, 15

## Statutes

5 U.S.C. § 702 ...................................................................................11

5 U.S.C. § 706(2)(A) ........................................................................20

28 U.S.C. § 1346(a)(2) ......................................................................14

28 U.S.C. § 1491(a) .....................................................................11, 14

## Rules

Fed. R. App. P. 29(a) ...........................................................................1

## Other Authorities

Amicus Br., *Massachusetts v. NIH*, No. 25-1343, (1st Cir. June 20, 2025), Doc. No. 118302593 ........................................................7

Gov't Reply in Supp. of Application for a Stay, *NIH v. Am. Pub. Health Ass'n*, No. 25A103 (Aug. 4, 2025)............................................21

## INTEREST OF AMICUS CURIAE[1]

The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") submits this brief with the consent of all parties pursuant to Federal Rule of Appellate Procedure 29(a)(2). The UAW is one of the largest and most diverse unions in North America, with nearly 1,000,000 active and retired members throughout the United States, Canada, and Puerto Rico, and in virtually every sector of the economy, including higher education.

The UAW files this brief to address the District Court's apparent misunderstanding about the "core business" of labor unions, which includes advocacy to preserve federal funding for scientific research and defending First Amendment rights on college campuses—both of which relate directly to the preservation of jobs and working conditions for members of unions such as the UAW. To help ensure that workers and organizations who depend on federal funding retain a venue where they can seek judicial relief, the UAW also files this brief to dispel the District

---

[1] The UAW certifies, under Fed. R. App. P. 29(a)(4)(E), this brief was not written in whole or in part by counsel for any party, that no party or party's counsel made a monetary contribution to the preparation and submission of this brief, and that no person or entity, other than the UAW, has made such a monetary contribution.

Court's suggestion in dicta that it lacked jurisdiction over this matter due

to the Tucker Act.

## INTRODUCTION

The Plaintiffs in this action are two labor unions—the American Association of University Professors and the American Federation of Teachers—that represent professors, teachers, and other academic professionals across the country, including at Columbia University. Plaintiffs have asserted constitutional, statutory, and regulatory claims challenging government action that was once unprecedented but is now all too common: the termination of hundreds of millions of dollars in federal grants, and threatened termination of billions more, to bring private organizations to heel and clamp down on First Amendment-protected activity deemed inappropriate by the current Presidential Administration.

In dismissing Plaintiffs' claims on standing grounds, the District Court rest its decision on a misunderstanding of the core interests of labor unions, such as the UAW, that represent academic workers on college campuses. Advocacy related to federal funding for scientific research and academic freedom relate directly to the working conditions and employment of members of such unions.

3

In addition, the District Court incorrectly suggested that it lacked jurisdiction over Plaintiffs' claims under the Tucker Act, which requires that certain contract-based claims against the government be filed in the Federal Court of Claims. As this brief explains, the Tucker Act does not bar Plaintiffs from raising their claims in federal district court—and recent non-precedential emergency stay decisions in *Department of Education v. California* and *NIH v. American Public Health Association* do not compel otherwise.

## ARGUMENT

### I.  Labor unions, Like the UAW, Advocate for Their Members' Interests Through a Variety of Methods in Addition to Collective Bargaining.

In its decision dismissing Plaintiffs' claims for lack of standing, the District Court derided the notion that Plaintiffs could have direct standing, as labor unions representing academic professionals, to challenge the Administration's threat to withhold federal funding from Columbia University. The District Court wrote: "Plaintiffs' core business is to be labor unions. . . . Query how many of the '1.8 million' dues paying members of the AFT, including nurses and paraprofessionals, believe its core functions include paying a cavalry of lawyers to argue the

4

'transcendent' importance of taxpayer funding for an elite university." SA23.

The District Court thus based its decision on a cramped and incorrect understanding of the "core business" of labor unions. Like the Plaintiffs, the UAW is a union that represents employees in a variety of sectors, including higher education. The UAW and its affiliated locals represent approximately 120,000 workers in higher education—graduate students, postdoctoral scientists, researchers, university staff, and faculty—at more than 50 institutions across the country, including Columbia University, the University of Alaska, the University of California, California State University, Harvard University, the University of Oregon, the University of New Hampshire, the University of Massachusetts, the University of Maine, the University of Pennsylvania, Princeton University, the Icahn School of Medicine at Mt. Sinai, the University of Vermont, the University of Washington, Washington State University, and many others. Its members work under such federal grants to conduct research on cancer, diabetes, traumatic brain injury, muscle regeneration, Alzheimer's disease, airborne pollutants, and chronic disease, among other subjects.

The UAW is dedicated to supporting its members' jobs and livelihoods. And it does so through more than just negotiating and enforcing collective bargaining agreements. For example, the UAW lobbies and advocates on its members' behalf to ensure that federal funds are available to perform crucial research to support both members' employment and the economy more broadly. *See, e.g.*, Letter from Rory L. Gamble, UAW President, to Speaker Nancy Pelosi (Apr. 23, 2020), https://studentresearchersunited.org/wp-content/uploads/2020/08/ Letter-to-Pelosi-on-COVID-19.pdf.

When necessary, supporting members means filing lawsuits. The unprecedented efforts by the Trump Administration to unlawfully terminate or otherwise impede Congressionally-authorized research funding puts tens of thousands of UAW members' jobs at risk. As a result, the UAW—like the Plaintiffs—has participated in litigation to protect its members' livelihoods. For example, when the NIH announced a new grant policy and terminated a large swath of grants affecting hundreds of NIH-funded research projects, including projects that UAW members performed research on, UAW joined a lawsuit challenging the policy and terminations. Compl., *Am. Pub. Health Ass'n. v. NIH*, No. 25-cv-10787

6

(D. Mass. Apr. 2, 2025), ECF No. 1. And when the Administration froze and ultimately terminated more than $2 billion in federal grants to Harvard University, the UAW, who represents workers at Harvard through its affiliates, joined AAUP in challenging those terminations as unconstitutional and violating the APA. Second Am. Compl., *AAUP - Harvard Fac. Chapter v. DOJ*, No. 25-cv-10910, (D. Mass. May 20, 2025), ECF No. 64. Similarly, when the National Institutes of Health announced a change to grant payments that capped spending on "indirect costs," putting UAW members' jobs at risk, UAW submitted an amicus brief supporting state and organizational plaintiffs challenging the NIH's policy change. Amicus Br., *Massachusetts v. NIH*, No. 25-1343, (1st Cir. June 20, 2025), Doc. No. 118302593. Like the Plaintiffs, the UAW has done so because one of its "core functions" as a labor union—supporting its members' interests at work—is directly implicated by the threats to federal research grant funding by the Administration.

Further, the ability of academic professionals to participate in First Amendment-protected speech activities on college campuses are part of the working conditions for scholars and instructors represented by UAW and other unions. The UAW—like the Plaintiffs—has been a stalwart

7

supporter of academic freedom and First Amendment-protected speech on college campuses, including at Columbia University where the UAW represents more than 5,000 graduate and undergraduate student workers, postdoctoral scholars, associate research scientists, and university support staff who provide instructional and/or research services and staff support for all university functions. Recognizing the importance of academic freedom to academic professionals, UAW and its affiliates and members have bargained for academic freedom clauses in collective bargaining agreements. *See* Amann S. Mahajan, *Harvard Grad Union Requests Academic Freedom Protections in New Contract Proposal*, Harvard Crimson (Aug. 24, 2025), https://www.thecrimson.com/article/2025/8/24/hgsu-academic-freedom-proposal/; Collective Bargaining Agreement Between New York University and UAW and UAW Local 7902 at 16–18, https://www.actuaw.org/uploads/1/2/3/6/123643831/nyu-7902-contract-2022-2028.pdf (Article VII). The UAW has also spoken out to defend academic freedom and joined other unions and educators to rally public support for the same. *See, e.g.,* N.Y. City Cent. Lab. Council, AFL-CIO, *Higher Ed Unions Rally for the Right to Learn* (Apr. 18, 2025),

https://nycclc.org/news/higher-ed-unions-rally-right-learn; UAW, *Statement from UAW President Shawn Fain Condemning Attacks on Higher Education* (Mar. 11, 2025), https://uaw.org/statement-from-uaw-president-shawn-fain-condemning-attacks-on-higher-education/. Contrary to the District Court's assumptions about labor unions, such support is part of the "core business" of the UAW.

## II. The Tucker Act Does Not Foreclose the District Court's Jurisdiction To Hear Plaintiffs' Claims.

The District Court held that it lacked jurisdiction over this case because it concluded that Plaintiffs lacked standing to bring their claims. SA28. After reaching that holding, the Court went on, in dicta, to suggest it also likely lacked jurisdiction over the case for a separate reason, based on a stay decision issued by the Supreme Court on its emergency docket, *Department of Education v. California*, 604 U.S. 650 (2025) (per curiam). SA28–29. Quoting *California*, the District Court noted that "the Tucker Act grants the Court of Federal Claims [exclusive] jurisdiction over suits based on . . . contract[s] with the United States," and "the [Administrative Procedures Act]'s limited waiver of immunity does not extend to orders to enforce a contractual obligation to pay money"—insinuating that is what is at issue here. *Id.* (quoting *California*, 604 U.S. at 651).

9

The District Court was mistaken to suggest that the Tucker Act likely eliminated its jurisdiction in this case for two reasons. First, Plaintiffs need not invoke any statutory waiver of sovereign immunity over their constitutional claims. Second, the Court of Federal Claims does not have exclusive jurisdiction over any of the statutory claims asserted by Plaintiffs here due to the Plaintiffs' lack of privity with the government.

## A. Sovereign Immunity Does Not Bar Plaintiffs' Constitutional Claims.

In addition to asserting claims under the Administrative Procedures Act ("APA"), Plaintiffs seek prospective injunctive relief for six constitutional claims—a stand-alone First Amendment claim (Count I) and five others (Counts II, VII, VIII, IX, and X). Contrary to the District Court's suggestion, there is no sovereign immunity waiver at issue with respect to these claims because no such waiver is necessary to enjoin unconstitutional acts by government actors.

The United States, as sovereign, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). As a result, a plaintiff in a suit

10

against the government must often establish that a particular claim falls within a statutory waiver of sovereign immunity, such as that found in Section 702 of the APA, 5 U.S.C. § 702, or the Tucker Act, 28 U.S.C. § 1491(a). However, no such waiver is necessary for claims grounded in constitutional rights that seek prospective relief.

In *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 701–02 (1949), the Supreme Court recognized that sovereign immunity does not apply to specific relief sought against official action "not within the officer's statutory powers" or "if the powers, or their exercise in the particular case, are constitutionally void." *See also Dalton v. Specter*, 511 U.S. 462, 472 (1994) (explaining that *Larson* "held that sovereign immunity would not shield an executive officer from suit if the officer acted either 'unconstitutionally *or* beyond his statutory powers'").

Following *Larson,* this Court has held that prospective relief sought against the government that would "compel[] the defendants to conform their official conduct to a legal mandate," such as "[a] court order of reinstatement, whether of government benefits or employment, is not barred by sovereign immunity." *Dotson v. Griesa*, 398 F.3d 156, 178 (2d Cir. 2005). *See also Conyers v. Rossides*, 558 F.3d 137, 150 (2d Cir. 2009)

("[C]laims for prospective equitable relief" against government actors in their official capacity who exceed their authority or violate the Constitution are not barred by sovereign immunity.); *see also Strickland v. United States*, 32 F.4th 311, 363 (4th Cir. 2022) ("[S]overeign immunity does not apply when a plaintiff files suit seeking equitable relief against federal officials in their official capacities and alleging that those officials . . . acted unconstitutionally."); *Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) ("[S]uits for specific relief against officers of the sovereign allegedly acting beyond statutory authority or unconstitutionally are not barred by sovereign immunity." (internal quotations omitted)).

Here, Plaintiffs seek prospective relief for their constitutional claims, requesting that the court "[d]eclare unlawful and set aside Defendants'" unlawful termination of funds and unconstitutional demands. JA110. The fact that this relief could result in the payment of funds does not change the analysis. While "the necessary result of compliance" with the Constitution will result in grant funds being paid, "[t]he fact that such an order might subsequently require the expenditure of state funds . . . is ancillary to such a prospective injunction and, thus

not barred." *Dotson*, 398 F.3d at 178 (internal quotations omitted); *cf.* *Bowen v. Massachusetts*, 487 U.S. 879, 909 (1988) (judgment that government "may not disallow the reimbursement on the grounds given" will likely lead to payment, but "this outcome is a mere by-product of that court's primary function of reviewing the Secretary's interpretation of federal law.")

As a result, no waiver of sovereign immunity is needed to hear Plaintiffs' constitutional claims, and which were properly before the District Court.[2]

## B. The Tucker Act Does Not Preclude the District Court's Jurisdiction.

Contrary to the suggestion of the District Court, the Tucker Act is no impediment to jurisdiction for Plaintiffs' APA claims. *See* Opening Br. 52–58. The District Court's suggestion that the Tucker Act forecloses its jurisdiction must be rejected because Plaintiffs' claims are not essentially

---

[2] The *per curiam* emergency stay orders in *Department of Education v. California*, 604 U.S. 650 (2025) and *National Institutes of Health v. American Public Health Association*, 145 S. Ct. 2658 (2025) (mem.) do not call this longstanding precedent into question, as both cases considered only arbitrary-and-capricious APA claims, not constitutional ones.

contractual and because Plaintiffs lack the required privity of contract to bring a claim before the Court of Federal Claims.

The Tucker Act confers jurisdiction to the Court of Federal Claims over actions based "upon any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1), or arising from certain "money-mandating" statutes requiring the United States to compensate "a particular class of persons for past injuries or labors." *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 324–25 (2020). The Act also provides that the Court of Federal Claims' jurisdiction over such contract actions is exclusive when damages exceed $10,000. 28 U.S.C. § 1346(a)(2).

Courts have acknowledged that litigants may seek to disguise contract-based claims as APA claims in order to seek equitable relief in a district court that would not be available in the Court of Federal Claims. See, e.g., *B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 727–28 (2d Cir. 1983); *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375–77 (2d Cir. 1999). In this narrow context, the Tucker Act may "impliedly forbid" injunctive relief when an APA claim "is essentially a contract

action." *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004).

To determine whether a claim is essentially contractual, courts examine (1) the source of the rights underlying a claim and (2) the type of relief sought. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982); *see also Walker*, 198 F.3d at 375–76 (adopting *Megapulse* test). Importantly, "the mere existence of such contract-related issues" does not render a claim a disguised contract action. *Megapulse*, 672 F.2d at 968–69. When claims are not "based on rights derived from a contract," or if remedies sought are not "fundamentally contractual in nature," then the claim is not barred by the Tucker Act. *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 408 (2d Cir. 2015).

A claim is based on a contract when it "stems from no independent, non-contractual source." *Walker*, 198 F.3d at 376–77 (plaintiff's right was based solely on its lease with the Army; no other statute or regulation provided the plaintiff with any cause of action); *see also Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 403 (2d Cir. 2017) (dismissing claims as contractual because the complaint's sole basis for the claims was a lease). This is not the case here: Plaintiffs' claims seek compliance with the U.S.

15

Constitution and Title VI, not the provisions of a government contract, and are therefore not fundamentally contractual in nature. *See President & Fellows of Harvard Coll. v. HHS*, No. 25-cv-11048, 2025 WL 2528380, at *14 (D. Mass. Sept 3, 2025) ("Given the nature of the First Amendment claims (purely constitutional) and the Title VI claims (statutory), these claims do not belong in the Court of Federal Claims[.]"); *Atterbury*, 805 F.3d at 406–07 (Due Process Clause of Fifth Amendment provides independent basis for claim). As to the second prong, the "declaratory" and "equitable" remedies sought by Plaintiffs are not available in contract. *See Harvard*, 2025 WL 2528380, at *13 (prospective relief mandating compliance with First Amendment and Title VI not available in Court of Federal Claims); *Atterbury,* 805 F.3d at 408. As such, Plaintiffs' constitutional and statutory claims were properly raised in the district court.

Here, it is even clearer that Plaintiffs' claims are not contractual in nature because "no contract exists between plaintiffs and the Government." See *Cmty. Legal Servs. in E. Palo Alto v. HHS*, 137 F.4th 932, 937 (9th Cir. 2025). *Thakur v. Trump* is instructive: there, university researchers sought declaratory and injunctive relief regarding

16

unconstitutional and unlawful grant termination decisions. The court correctly asserted jurisdiction over these constitutional and APA claims over the government's Tucker Act objections, explaining that the plaintiffs' claims were "not disguised breach of contract claims for money damages" because, among other reasons, "[p]laintiffs do not have the right to sue under the Tucker Act because they are not parties to a government contract." __ F.Supp.3d __, No. 25-cv-04737, 2025 WL 1734471, at *19 (N.D. Cal. June 23, 2025), *motion to stay denied*, 148 F.4th 1096 (holding claims not based on grant agreements, noting "the record does not reflect that Plaintiffs are even parties to the grant agreements"), *motion for reconsideration en banc pending*.

Said differently, the Tucker Act is inapplicable because "there must be privity of contract between the plaintiff and the United States" to bring a contract claim in the Court of Federal Claims. *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998). There is no such privity here: as Defendants stated before the District Court, "Plaintiffs do not allege that they or their individual members were parties to the terminated contracts, nor do they argue that they are intended third party beneficiaries." Mem. in Opp'n to Mot. for Prelim. Inj. 10, Dkt.

No. 91. As such, Plaintiffs would be unable to bring any contract-based claims before the Court of Federal Claims.

This inability to bring their claims before the Court of Federal Claims confirms that district court is the appropriate place for Plaintiffs to enforce their constitutional, statutory, and regulatory rights. Because "[t]here cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act," courts have "categorically reject[ed] the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims." *Cmty. Legal Servs.*, 137 F.4th at 939 (quoting *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176–77 (D.C. Cir. 2006)).

To be clear, the lack of privity with the government does not mean that Plaintiffs lack standing. "[T]he traditional Article III standing rules do not change simply because the alleged harm occurred through the termination of a contract with a third party." *Thakur*, 2025 WL 1734471, at *22. Standing requires plaintiffs to show they "have a 'personal stake' in the dispute" at hand. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024); *see Thakur*, 2025 WL 1734471 at *21 (recognizing "'personal stake' . . . is easy to see" when researchers have grants funding their

18

projects terminated). As Plaintiffs have demonstrated in their opening brief, Opening Br. 25–49, they have sufficiently pleaded an injury-in-fact from Defendants' actions redressable by their requested relief.

Indeed, if Defendants' jurisdictional argument was correct, Plaintiffs would have no court in which they could bring their claims. This would be an untenable result in light of the "basic presumption of judicial review for one suffering legal wrong because of agency action," *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16–17 (2020) (cleaned up), and the Supreme Court's particular acknowledgement that when considering a conflict between the APA and Tucker Act, "established principles of statutory construction mandate a broad construction of the APA and a narrow interpretation of the Tucker Act." *Bowen*, 487 U.S. at 908 n.46 (internal quotations omitted).

Finally, the non-precedential emergency stay orders from the Supreme Court in *California* and *National Institutes of Health v. American Public Health Association*, No. 25A103, 2025 WL 2415669 (Aug. 21, 2025) do not compel a different result. Whatever those orders

may stand for—which has been the subject of some debate[3]—they involved factual circumstances distinct from those presented here.

Both cases involved only challenges to grant terminations as arbitrary and capricious in violation of the APA, 5 U.S.C. § 706(2)(A). The District Court in *California* explained that the plaintiffs and the public instrumentalities on whose behalf they were seeking relief were grant recipients, *see California v. U.S. Dep't of Educ.*, 769 F. Supp. 3d 72, 76 n.2 (D. Mass. 2025). Those plaintiffs therefore would be in privity with the United States and, unlike the plaintiffs here, are able to bring contractual claims to the Court of Federal Claims. And while *NIH*'s collection of private-party plaintiffs also included some plaintiffs, including UAW, representing individuals who were not signatories to the terminated grants, the privity-of-contract issue was not raised at the Supreme Court, and no opinion issued in *NIH* addresses the issue. Indeed, the government's arguments at the Supreme Court in *NIH* treated all private respondents as parties to grants: "Respondents have

---

[3] *See, e.g., President & Fellows of Harvard College*, 2025 WL 2528380, at *12 n.9 (explaining these "emergency docket rulings regarding grant terminations have not been models of clarity, and have left many issues unresolved.")

*express*, not implied, contracts with the NIH—the notices of award." Gov't Reply in Supp. of Application for a Stay at 9, *NIH v. Am. Pub. Health Ass'n*, No. 25A103 (Aug. 4, 2025). As such, neither decision even suggests that plaintiffs who are not parties to grant agreements are barred from bringing constitutional, statutory, and regulatory claims regarding grant terminations in federal district court. This Court should reject the proposition that Plaintiffs have no available venue to obtain judicial review of these claims.

## CONCLUSION

For the reasons described above, as well as for the reasons articulated by the Plaintiffs-Appellants, the judgment below should be reversed.

Dated: September 29, 2025

*/s/ Joshua B. Shiffrin*
Joshua B. Shiffrin
J. Alexander Rowell
Bredhoff & Kaiser, P.L.L.C.
805 Fifteenth Street NW,
Suite 1000
Washington, D.C. 20005
(202) 842-2600
jshiffrin@bredhoff.com
arowell@bredhoff.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.     This document complies with the type-volume limitation set forth in the Federal Rules of Appellate Procedure 32(a)(7)(B) and 29(a)(5) because it contains 3,775 words.

2.     This document complies with the type-face requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced type-face using 14-point font.

Dated: September 29, 2025          */s/ Joshua B. Shiffrin*
                                   Joshua B. Shiffrin

23

## CERTIFICATE OF SERVICE

I certify that on September 29, 2025, I electronically filed this Brief of Amicus Curiae in Support of Plaintiffs-Appellees with the Clerk of Court for the U.S. Court of Appeals for the Second Circuit by using the ACMS system, causing all parties to be served pursuant to Local Rule Local Rule 25.1(h)(2).

Dated: September 29, 2025        */s/ Joshua B. Shiffrin*
                                              Joshua B. Shiffrin