25-1529
*AAUP v. DOJ*

MENASHI, *Circuit Judge*, dissenting:

Last year, the American Association of University Professors ("AAUP") and the American Federation of Teachers ("AFT") sought a preliminary injunction against the federal government. *See AAUP v. DOJ*, No. 25-CV-2429, 2025 WL 1684817, at *1 (S.D.N.Y. June 16, 2025). The unions wanted a restoration of grants withheld from Columbia University and prospective relief that would prevent the federal government from "interfering with more than $5 billion in active taxpayer-funded grants and contracts to Columbia." *Id.* (internal quotation marks omitted).

In June 2025, the district court dismissed the case on the ground that the AAUP and the AFT lacked Article III standing. *See id.* at *11. The plaintiffs had requested a "judicial order commanding executive agencies to pay out money to non-party Columbia pursuant to grants and contracts that were previously awarded by executive agencies to non-party Columbia." *Id.* But, according to the district court, "neither Plaintiffs nor their members were ever the recipients of those grants and contracts." *Id.* The district court further concluded that the unions could not establish organizational or representational standing. *See id.* at *12. It said that "[i]f any funds have been wrongfully withheld, such funds may be recovered at the end of a successful lawsuit by the appropriate plaintiff in an appropriate forum." *Id.* at *1 (citing *Dep't of Educ. v. California*, 145 S. Ct. 966, 969 (2025)).

The AAUP and the AFT appealed that decision to our court. On July 23, 2025—after the plaintiffs had noticed an appeal—the federal government and Columbia University entered into an agreement. That "resolution agreement," the government explained, "restored 'a vast majority' of funding that is the subject of plaintiffs' lawsuit." Appellees' Br. 15. The government argued that the case was moot

because "the primary relief plaintiffs sought was the restoration of funding to Columbia," and "[t]he Resolution Agreement restored most of that funding." *Id.* at 49.

The plaintiffs insisted that the case was not moot. "[B]y its own terms, the Agreement does not restore all terminated funding," the unions said, and even if the "grants are reinstated, the Agreement does not address or undo the significant nonmonetary harms that Plaintiffs and their members have suffered, which warrant judicial review and redress." Appellants' Br. 59. "Moreover, the Agreement *enshrines* the unlawful infringements of Plaintiffs' members' free speech and academic freedom at the heart of Plaintiffs' complaint." *Id.* That complaint "expressly seeks 'compensatory and viable damages' for Defendants' violations of their constitutional rights, which 'automatically avoids mootness.'" *Id.* (alteration omitted) (quoting *Stokes v. Village of Wurtsboro*, 818 F.2d 4, 6 (2d Cir. 1987)).

The parties have now stipulated to the dismissal of this appeal. Joint Motion at 3, *AAUP v. DOJ*, No. 25-1529 (2d Cir. Mar. 12, 2026), ECF No. 105. In addition, the parties move for this court to "vacate the district court's decision and to remand the action for dismissal based on mootness." *Id.* at 4. A majority of this panel has granted the motion. I would deny it, and therefore I dissent.

## I

In general, "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment. The same is true when mootness results from unilateral action of the party who prevailed below." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994) (footnote and citation omitted); *see United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950) (explaining that vacatur

2

"clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance"). "Where mootness results from settlement, however, the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice." *Bancorp*, 513 U.S. at 25. Under those circumstances, "[t]he denial of vacatur is merely one application of the principle that 'a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.'" *Id.* (alteration omitted) (quoting *Sanders v. United States*, 373 U.S. 1, 17 (1963)).[1]

The parties here have not settled this case.[2] If this case had settled, the rule from *Bancorp* would directly apply, and vacatur

---

[1] *Munsingwear* vacatur has been described as an "equitable remedy." *Bancorp*, 513 U.S. at 25. But "a remedy, in the technical sense, 'is the end result of a law suit,' 'what the court actually does for, or to the client in the particular case.'" William Baude & Samuel L. Bray, *When the Executive Has Unclean Hands*, 135 Yale L.J.F. 567, 580 n.83 (2026) (quoting Samuel L. Bray & Emily Sherwin, Ames, Chafee, and Re on Remedies: Cases and Materials 3 (4th ed. 2024)). "Remedies, therefore, do not include judicial actions such as a … vacatur of a lower-court opinion." *Id.* While vacatur is not an equitable remedy, the decision to award this form of relief is guided by "equitable considerations." *Ozturk v. Hyde*, 155 F.4th 187, 199 (2d Cir. 2025) (Menashi, J., concurring in the denial of rehearing en banc) (quoting *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 721 n.10 (2007)); *see also Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 18 (2023) (Jackson, J., concurring in the judgment) (explaining that vacatur "serves a specific, equitable function").

[2] The plaintiffs are unions representing faculty members at Columbia University. The settlement agreement was between Columbia University itself and the federal government.

would be improper. Nevertheless, the plaintiffs have abandoned their appeal, so the same considerations apply. The plaintiffs continue to "maintain that the Agreement did not immediately moot their claims." Joint Motion, *supra*, at 3. Instead, the plaintiffs explain, the settlement agreement led to "changed circumstances" that, alongside unspecified "actions of third parties, and other factors," affected their desire to continue the lawsuit. *Id.* In light of those circumstances and actions, the "plaintiffs-appellants *no longer intend to seek* prospective equitable relief or monetary damages" and have decided to "*withdraw* their requests for that relief." *Id.* (emphasis added).

The majority opinion asserts that the plaintiffs "only withdrew their remaining requests for relief *after* the Government and Columbia entered into the Agreement, thereby obtaining the 'primary relief' Union Plaintiffs sought, *i.e.*, the restoration of federal funding to Columbia." *Ante* at 9 (quoting Appellees' Br. 49). But that is not how the plaintiffs themselves understand the dispute. After the agreement between the government and Columbia, the plaintiffs filed an appellate brief maintaining that the "agreement does not moot this case." Appellants' Br. 59. The plaintiffs noted that the agreement "does not restore all terminated funding," "does not address or undo the significant nonmonetary harms" for which the plaintiffs sought damages, and "*enshrines* the unlawful infringements of Plaintiffs' members' free speech and academic freedom at the heart of Plaintiffs' complaint." *Id.* And the plaintiffs explained that, "[f]ar from precluding Defendants from again restricting funding or speech in precisely the same unlawful manner," the agreement preserved the government's right to act in ways the plaintiffs sought to enjoin. *Id.* at 60.

According to the plaintiffs' brief, the agreement "*amplifies* the chilling effect of Defendants' coercive actions on Plaintiffs' members,"

4

*id.* at 60 (emphasis added), because the plaintiffs alleged that the defendants' "very purpose in exerting pressure on Columbia was to force Columbia to censor speech which the Defendants could not reach directly," *id.* at 37. Columbia's "predictable acquiescence to Defendants' demands," the unions argued, made the plaintiffs' injuries *worse*. *Id*.

The majority now rejects the plaintiffs' arguments about the effect of the agreement on the lawsuit. [3] The majority instead concludes that "the Government's Agreement with Columbia rendered Union Plaintiffs' lawsuit largely superfluous" because "the Agreement had already accomplished the lawsuit's chief goals." *Ante* at 9, 11. The majority does not explain why the unions were wrong that the same controversy continued after the agreement was reached.

In fact, the controversy ended because of the plaintiffs' decision to abandon their claims for relief and to dismiss the litigation. The plaintiffs admit as much, and the majority does not disagree. The majority expressly assumes that the case became moot only when the plaintiffs voluntarily decided to withdraw their requests for relief. *See id.* at 10 n.1. But that means "this controversy did not become moot due to circumstances unattributable to any of the parties." *Bancorp*, 513 U.S. at 26 (alteration omitted) (quoting *Karcher v. May*, 484 U.S. 72, 83 (1987)). Rather, the "controversy ended" because "the losing party" has "declined to pursue its appeal." *Id.* (quoting *Karcher*, 484 U.S. at 83). In this scenario, "the *Munsingwear* procedure is

---

[3] The majority denies that it has rejected the plaintiffs' arguments about the effect of the agreement. *See ante* at 10 n.1. But there is no way to reconcile the majority's view that the agreement rendered the lawsuit "largely superfluous," *id.* at 9, with the plaintiffs' appellate arguments that the agreement amplified their injuries and made the lawsuit more urgent.

inapplicable." *Id.* (quoting *Karcher*, 484 U.S. at 83). "[T]he case stands no differently than it would if jurisdiction were lacking because the losing party failed to appeal at all." *Id.* at 25.

## II

It makes no difference that the parties have stipulated that the case is moot "for reasons not fairly attributable to plaintiffs-appellants." Joint Motion, *supra*, at 3. That is a legal conclusion. "Whether a case is moot presents a legal issue that we … review de novo," *NYCLU v. Grandeau*, 528 F.3d 122, 128 (2d Cir. 2008), so "[i]n assessing whether a case is moot, we must examine all the facts and circumstances," *Etuk v. Slattery*, 936 F.2d 1433, 1441 (2d Cir. 1991). We do not accept a conclusory assertion that the mootness is not attributable to the plaintiffs; we look at the underlying facts. As discussed above, the plaintiffs themselves have identified the facts underlying their conclusion about mootness. In their own account, conduct of other parties has affected their interest in pursuing the lawsuit, but it did not moot the case. Instead, their decision to withdraw their requests for relief has caused the mootness.

Vacating the judgment of the district court under these circumstances undermines the "long recognized" principle that "the equities generally do not favor *Munsingwear* vacatur when the party requesting such relief played a role in rendering the case moot." *Chapman v. Doe*, 143 S. Ct. 857, 857 (2023) (Jackson, J., dissenting). It is not enough that the actions of third parties have affected the plaintiffs' interest in the case if the plaintiffs still could have sought relief from the judgment "by appeal as of right." *Bancorp*, 513 U.S. at 27. That is the "primary route" by which "parties may seek relief from the legal consequences of judicial judgments. To allow a party who steps off the statutory path [of appealing the judgment] to employ the

6

secondary remedy of vacatur as a refined form of collateral attack on the judgment would—quite apart from any considerations of fairness to the parties—disturb the orderly operation of the federal judicial system." *Id.* While "*Munsingwear* establishes that the public interest is best served by granting relief when the demands of 'orderly procedure' cannot be honored," at the same time "the public interest requires those demands to be honored when they can." *Id.* (citation omitted) (quoting *Munsingwear*, 340 U.S. at 41).

The majority argues that the case law "imposes no universal rule against granting a *Munsingwear* vacatur merely because an appellant plays a role in mooting an appeal." *Ante* at 11. The majority relies on a case in which, after the Supreme Court had granted review, the prevailing party in the court of appeals "voluntarily dismissed her pending suits with prejudice" because her lawyer was "suspended … from the practice of law" for committing fraud in connection with the underlying litigation. *Laufer*, 601 U.S. at 3-4. The Supreme Court said it was "not convinced" that the prevailing party "abandoned her case in an effort to evade our review." *Id.* at 5. And the vacatur under those circumstances was consistent with the Court's "'established practice' of vacating the judgment of the Court of Appeals below 'when mootness occurs through the unilateral action of the party who prevailed in the lower court.'" *Id.* at 22 (Jackson, J., concurring in the judgment) (alteration omitted) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 70-71 (1997)). The Court does not "permit a plaintiff to obtain a favorable judgment, take voluntary action that moots the dispute, and then retain the benefit of the judgment." *Arizonans for Official English*, 520 U.S. at 75 (alterations omitted).

In this case, however, the majority vacates the judgment even accepting the "assumption" that mootness occurred through the

7

unilateral action of the parties that *lost* in the lower court—parties that could, and initially did, pursue an appeal. *Ante* at 10 n.1.

When we have considered a request for vacatur from a losing party that caused the mootness, we have required the losing party to explain that its mootness-causing conduct was *independent* of the litigation. In *Hassoun v. Searls*, for example, the case became moot while an appeal was pending because the government deported the petitioner-appellee. *See* 976 F.3d 121, 131 (2d Cir. 2020). We explained that under the applicable statutes, "the government is required to remove an alien who has been ordered removed 'within a period of 90 days.'" *Id.* at 131 (quoting 8 U.S.C. § 1231(a)(1)(A)). We concluded that "[t]he government's ongoing effort to comply with [those statutes] was 'independent of the pending lawsuit' and does not indicate that the government acted 'in order to overturn an unfavorable precedent.'" *Id.* at 132-33 (quoting *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 351-52 (D.C. Cir. 1997)). The removal of the petitioner "was 'the natural and apparently long-anticipated result' of the government's immigration enforcement efforts." *Id.* at 127 (quoting *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of Watervliet*, 260 F.3d 114, 123 (2d Cir. 2001)). In other words, we granted vacatur because the mootness-causing conduct was independent of the litigation, non-discretionary, and long anticipated.

This case bears no resemblance to that one. The plaintiffs here never sought the sort of agreement that Columbia executed with the government; to the contrary, the plaintiffs expressly opposed that agreement and denied that it resolved their claims. And the plaintiffs have admitted that the mootness resulted from their own choice to withdraw those claims. Today's decision—to vacate the judgment based on mootness caused by the losing party's voluntary, litigation-related conduct—is unprecedented.

## III

Even apart from these considerations about the cause of the mootness, the motion for vacatur does not even attempt to show "the purported need for vacatur, *in terms of the harms it would avert*." *Laufer*, 601 U.S. at 20 (Jackson, J., concurring in the judgment). The motion identifies no "demonstrated harm-related justification for vacating [the] lower court's opinion." *Id.* We have said that "vacatur is inappropriate" when the prior judgment has "no legal consequences … for the parties." *Hassoun*, 976 F.3d at 134. That is because "[v]acatur pursuant to *Munsingwear* is an exception to the regular procedure for establishing and revising precedents." *Id.* at 135. "Where *Munsingwear* does not apply, because a 'decision poses little risk of prejudice to the parties,' the 'heavy weight' of precedent and regular procedure 'greatly exceeds the light, if existent, danger of unfair preclusive effect.'" *Id.* (quoting *Mahoney v. Babbitt*, 113 F.3d 219, 224 (D.C. Cir. 1997)).

The parties have not attempted to establish a "realistic probability that the [district] court's jurisdictional decision will spawn legal consequences" and cause prejudice to either party. *Id.* at 134. That fails to meet the burden of showing "equitable entitlement to the extraordinary remedy of vacatur." *Bancorp*, 513 U.S. at 26.

\* \* \*

Because the parties have not met the burden to justify vacatur here, I would deny the motion for vacatur. I dissent from the decision of the court to grant it.